1  SCOTT VOELZ (S.B. #181415)
   svoelz@omm.com
2  ANDREW WEISBERG (S.B. #307519)
   aweisberg@omm.com
3  O'MELVENY & MYERS LLP
   400 South Hope Street, 18th Floor
4  Los Angeles, California 90071
   Telephone:  +1 213 430 6000
5  Facsimile:  +1 213 430 6407

6  *Attorneys for Defendant XPO Logistics Cartage, LLC*

7  NICKY JATANA (S.B. #197682)
   nicky.jatana@jacksonlewis.com
8  JING TONG (S.B. #285061)
   jing.tong@jacksonlewis.com
9  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
10 Los Angeles, California 90017
   Telephone:  +1 213 689 0404
11 Facsimile:  +1 213 689 0430

12 *Attorneys for Defendant XPO Logistics, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON QUINONES, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LOGISTICS, INC.; XPO LOGISTICS CARTAGE, LLC; and DOES 1 through 100,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453**<br><br>[Filed concurrently with Civil Cover Sheet; Notice of Interested Parties; Corporate Disclosure Statement; and Declarations of Marty Speiser and Troy Tibbetts]<br><br>(Los Angeles Superior Court Case No. 22STCV38778) |

DEFENDANTS' NOTICE OF REMOVAL

**TABLE OF CONTENTS**

Page

I. CLASS ACTION FAIRNESS ACT JURISDICTION. ............................... 3
   A. Plaintiff's Proposed Class Consists Of More Than 100 Members. ............................................................................................ 3
   B. Diversity Of Citizenship Is Established. ........................................... 3
   C. The Aggregate Amount In Controversy Exceeds $5,000,000. .............. 6
      1. Unlawful Deductions from Wages ........................................... 8
      2. Penalties For Wage Statement Claims ..................................... 9
      3. Penalties For Failure to Pay Wages When Due ..................... 10
      4. Unreimbursed Expenses ......................................................... 11
      5. Penalties for Unfair Business Practices ................................. 12
      6. Demand for Injunctive Relief ................................................. 12
      7. Attorneys' Fees ....................................................................... 13
II. VENUE. ..................................................................................................... 14
III. PROCEDURAL REQUIREMENTS. ...................................................... 14
IV. CONCLUSION. ........................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvarez v. XPO Logistics Cartage, LLC*,
  No. 18-3736 (C.D. Cal. 2018) .................................................................................3

*Behrazfar v. Unisys Corp.*,
  687 F. Supp. 2d 999 (C.D. Cal. 2009) ....................................................................6

*Cain v. Hartford Life & Accident Ins. Co.*,
  890 F. Supp. 2d 1246 (C.D. Cal. 2012) ..................................................................6

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) .................................................................................13

*Coleman v. Estes Express Lines, Inc.*,
  730 F. Supp. 2d 1141 (C.D. Cal. 2010) ...........................................................9, 10

*Dart Cherokee Basin Operating Co. v. Owens*,
  135 S. Ct. 547 (2014) ..............................................................................................2

*Davis v. HSBC Bank Nevada, N.A.*,
  557 F.3d 1026 (9th Cir. 2009) .................................................................................4

*Evers v. La-Z-Boy Inc.*,
  2022 WL 2966301 (S.D. Cal. July 27, 2022) .......................................................11

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
  2018 WL 3748667 (9th Cir. Aug. 8, 2018) ..........................................................13

*Galt G/S v. JSS Scandinavia*,
  142 F.3d 1150 (9th Cir. 1998) ...............................................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................13

*Henry v. Cent. Freight Lines, Inc.*,
  692 F. App'x 806 (9th Cir. 2017) ............................................................................6

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ..................................................................................................4

*Jasso v. Money Mart Express, Inc.*,
  2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ..........................................................13

*Johnson v. Columbia Props. Anchorage*, LP,
  437 F.3d 894 (9th Cir. 2006) ...................................................................................4

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ...................................................................................4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Morris v. Gilmer*,
 129 U.S. 315 (1889) .................................................................................... 4

*Navarro v. Servisair, LLC*,
 2008 WL 3842984 (N.D. Cal. Aug. 14, 2008) ........................................... 8

*Portillo v. Chipotle Mexican Grill, Inc.*,
 2018 WL 637386 (C.D. Cal. Jan. 31, 2018) ............................................... 4

*Rippee v. Boston Market Corp.*,
 408 F. Supp. 2d 982 (S.D. Cal. 2005) ...................................................... 12

*Salter v. Quality Carriers, Inc.*,
 974 F.3d 959 (9th Cir. 2020) ...................................................................... 7

*Standard Fire Ins. Co. v. Knowles*,
 568 U.S. 588 (2013) .................................................................................... 6

*Vasquez v. Blue Cross of Cal.*,
 2015 WL 2084592 (C.D. Cal. May 5, 2015) ........................................... 12

**STATUTES**

28 U.S.C. § 1332 ............................................................................................. passim

28 U.S.C. § 1446 ....................................................................................................... 2

28 U.S.C. § 1453 ....................................................................................................... 2

Cal. Bus. & Prof. Code § 17200 ............................................................................ 12

Cal. Labor Code § 1182.12 ...................................................................................... 8

Cal. Labor Code § 201-03 ..................................................................................... 10

Cal. Labor Code § 221 ............................................................................................. 8

Cal. Labor Code § 226 ............................................................................................. 9

Cal. Labor Code § 2802 ......................................................................................... 11

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S ATTORNEY OF RECORD:**

Pursuant to 28 U.S.C. §§ 1446 and 1453, Defendants XPO Logistics, Inc. and XPO Logistics Cartage, LLC ("Defendants") hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d) and 1441 and state the following grounds for removal:

1. On December 13, 2022, Plaintiff Milton Quinones ("Plaintiff") filed his Complaint in the Superior Court of the State of California, County of Los Angeles, styled and captioned as above. The matter was given Case No. 22STCV38778 and is currently assigned to Judge Kenneth Freeman in Department 14 ("State Court Action"). Pursuant to 28 U.S.C. §1446(a), attached as Exhibits 1-12 are copies of all proceedings, pleadings, and orders served in the State Court Action.

2. This case is purportedly brought as a civil class and representative action for damages and/or penalties under the California Labor Code by Plaintiff on behalf of himself and other putative class members against Defendants. Plaintiff brings claims for Defendants' alleged taking of unlawful deductions, failure to reimburse business expenses, failure to furnish timely and accurate wage statements, and failure to pay all wages due upon separation. Plaintiff also alleges that Defendants committed acts of unfair competition as defined by the California Unfair Business Practices Act. In the Complaint, Plaintiff states that his claims arise from Defendants' alleged misclassification of its drivers as independent contractors rather than employees. (Compl. ¶¶ 3-4, 17-39.) Based on the allegations in the Complaint and on behalf of himself and the putative class, Plaintiff seeks damages, restitution, penalties, attorneys' fees, interest, costs, and injunctive relief. (*Id.* at 14.)

3.      Defendants were served with the Complaint on January 23, 2022. On February 21, 2023, Defendants filed in this Court an Answer in response to Plaintiff's Complaint. Other than the documents attached as Exhibits 1-12, no other pleadings, proceedings, or orders have been filed and served in this action.

4.      This Notice of Removal has been filed within 30 days of service of the Complaint upon Defendants. As such, the requirement of 28 U.S.C. § 1446(b) that removal occur within 30 days of service of the complaint has been satisfied.

5.      In addition, this Notice of Removal has been filed within one year of the commencement of the State Court Action (*i.e.,* December 13, 2022), as required by 28 U.S.C. § 1446(c).

6.      Defendants deny liability on all claims alleged in this action, deny that Plaintiff and the putative class members are employees, deny that class certification is proper, deny that Plaintiff and putative class members have been damaged in any amount, and reserve all rights and defenses in these regards. However, for purposes of meeting the jurisdictional requirements of removal only, Defendants submit that this Court has subject matter jurisdiction over all the claims alleged in this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a putative class action in which: (a) there are 100 or more members in Plaintiff's proposed class; (b) at least some members of the proposed class, including Plaintiff himself, have a different citizenship from one or more defendants; and (c) the claims of the proposed class members, in the aggregate, exceed the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1446, 1453; *see also Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.") (internal quotations omitted).

I. **CLASS ACTION FAIRNESS ACT JURISDICTION.**

    A. **Plaintiff's Proposed Class Consists Of More Than 100 Members.**

7. For CAFA jurisdiction to attach, the number of putative class members of all proposed plaintiff classes in the aggregate must equal or exceed 100. 28 U.S.C. § 1332(d)(5)(B). At Paragraph 45.a of the Complaint, Plaintiff defines the putative class he seeks to represent in this action as follows:

> "All individuals who (1) personally drove for XPO under a hiring agreement like an Independent Contractor Operating Contract, i.e., Drivers, in the state of California; (2) started working for XPO after the class notice was issued in *Alvarez, et al. v. XPO Logistics Cartage, LLC, et al.*, 2021 WL 5277713 (C.D. Cal. 2021); and (3) were classified by XPO as an independent contractor."

8. Class notice was first issued in *Alvarez* on January 29, 2021. *See* Declaration of C. Joe Sayas iso Motion for Settlement Approval, *Alvarez v. XPO Logistics Cartage, LLC*, No. 18-3736 (C.D. Cal.), ECF No. 515-2 ¶ 22.

9. From February 1, 2021 through December 24, 2022, Defendants contracted with 216 individuals and entities to provide trucking services in California. (Speiser Decl. ¶ 2.)

10. Additionally, Plaintiff alleges that there are "hundreds to thousands of individuals meeting the Class definition." (Compl. ¶ 47.)

11. Thus, there are well over the 100 putative class members required for removal under CAFA. 28 U.S.C. § 1332(d)(5)(B).

    B. **Diversity Of Citizenship Is Established.**

12. Diversity of citizenship is established pursuant to 28 U.S.C. § 1332(d)(2) because members of the class are citizens of California, and neither the named Defendants or real party in interest are citizens of California.

*Plaintiff*

13. Plaintiff is a resident of California, (Compl. ¶ 8), and is therefore a citizen of California for diversity of citizenship purposes. *See Morris v. Gilmer*, 129 U.S. 315, 328-29 (1889); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("[A] person's state citizenship is . . . determined by her state of domicile.").

14. Plaintiff seeks to represent a class of individuals who have "resided and worked in the State of California." (Compl. ¶ 11.)

*Defendant XPO Logistics Cartage, LLC*

15. For limited liability companies, courts look to the citizenship of each member of the limited liability company in determining the limited liability company's citizenship for diversity jurisdiction purposes. *See Johnson v. Columbia Props. Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006).

16. Before its acquisition by STG Logistics, Inc. ("STG"), XPO Logistics Cartage, LLC was a limited liability company whose sole member was XPO Intermodal Solutions, Inc. (Tibbetts Decl. ¶ 3.)

17. For purposes of diversity jurisdiction, a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1).

18. A corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities" or its "nerve center," and "in practice it should normally be the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1029 (9th Cir. 2009); *Portillo v. Chipotle Mexican Grill, Inc.*, 2018 WL 637386, at *1 (C.D. Cal. Jan. 31, 2018).

19. XPO Intermodal Solutions, Inc. was incorporated under the laws of Ohio. (Tibbetts Decl. ¶ 4.)

20. Before its acquisition by STG, XPO Intermodal Solutions, Inc. maintained its headquarters at 5165 Emerald Parkway, Dublin, Ohio 43017, where its officers directed, controlled, and coordinated the corporation's activities. (*Id.* ¶ 5.)

21. Therefore, before its acquisition by STG, XPO Logistics Cartage, LLC was a citizen of Ohio.

22. On March 25, 2022, STG acquired XPO Logistics Cartage, LLC and XPO Intermodal Solutions, Inc., among other companies, from XPO Logistics, Inc. After the acquisition, XPO Logistics Cartage, LLC was renamed STG Cartage, LLC, and XPO Intermodal Solutions, Inc. was renamed STG Intermodal Solutions, Inc. (*Id.* ¶¶ 2, 6; *see also* Compl. ¶ 10.)

23. STG Cartage, LLC's sole member is STG Intermodal Solutions, Inc. (Tibbetts Decl. ¶ 7.)

24. STG Intermodal Solutions, Inc. continues to maintain its headquarters at 5165 Emerald Parkway, Dublin, Ohio 43017, where its officers direct, control, and coordinate the corporation's activities. (*Id.* ¶ 8.)

25. STG Intermodal Solutions, Inc. was incorporated under the laws of Ohio. (*Id.* ¶ 9.)

26. Therefore, STG Cartage, LLC is a citizen of Ohio.

*Defendant XPO Logistics, Inc.*

27. XPO Logistics, Inc. maintains its headquarters at 5 American Lane, Greenwich, CT 06831, where its officers direct, control, and coordinate the corporation's activities. (Compl. ¶ 9; Tibbetts Decl. ¶ 10.)

28. XPO Logistics, Inc. was incorporated under the laws of Delaware. (Tibbetts Decl. ¶ 11; Compl. ¶ 9.)

29. Therefore, XPO Logistics, Inc. is a citizen of Delaware and Connecticut.

30. Furthermore, Plaintiff has acknowledged that neither Defendant is a

citizen of California. (Compl. ¶¶ 9-10.)

31. Accordingly, for the purposes of removal, and pursuant to 28 U.S.C. § 1332(c), Defendants have been for all times relevant citizens of the States of Delaware, Connecticut, and Ohio.

32. Because Plaintiff is a citizen of California who sues on behalf of a California class, while STG Cartage, LLC is a citizen of Ohio and Defendants are citizens of Delaware, Connecticut, and Ohio, at least one, if not all, putative class members, on the one hand, and STG Cartage, LLC and Defendants, on the other hand, are diverse from one another. Thus, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

### C. The Aggregate Amount In Controversy Exceeds $5,000,000.

33. Defendants contend that Plaintiff's claims are without merit, that neither Plaintiff nor the putative class members are entitled to damages, penalties, or any other relief they seek in this action, and that class certification would be inappropriate. For purposes of meeting the jurisdictional requirements of removal only, Defendants submit that the aggregate amount "in controversy" for all putative class members exceeds the sum or value of $5,000,000, as required by 28 U.S.C. § 1332(d)(2). "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

34. In determining the amount in controversy, the court must "accept[] the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *see also Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012). "The removing party's burden is not daunting, and defendants are not obligated to research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp.

2d 999, 1004 (C.D. Cal. 2009) (internal quotations omitted).

35.  Here, Plaintiff seeks recovery for alleged unreimbursed expenses, unlawful deductions, penalties for failure to provide accurate, itemized wage statements, failure to pay wages upon separation, waiting time penalties under Cal. Labor Code § 203, attorneys' fees, and punitive damages. (Compl. at 10-14.) Based on Plaintiff's allegations, the amount placed in controversy exceeds the $5,000,000 threshold for CAFA removal. *See* 28 U.S.C. § 1332(d).

36.  In establishing that the amount in controversy exceeds the $5,000,000 CAFA threshold, Defendants make the following reasonable assumptions based on Plaintiff's Complaint and the facts regarding the drivers at issue in the Complaint. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (noting that defendant is permitted to "rely on reasonable assumptions" in making showing on the amount in controversy for CAFA removal).:

   a. The putative class, as defined by Plaintiff, is comprised of all individuals who personally drove for XPO in California, were classified by XPO as independent contractors, and began working for XPO on or after February 1, 2021. (*See* Compl. ¶ 45.a.) The total number of individuals and entities who contracted with XPO (and later STG Cartage, LLC) on or after February 1, 2021 through December 24, 2022, were classified as independent contractors, and received contractual settlement is 216. (Speiser Decl. ¶ 2.) Thus, Defendants assume for purposes of establishing jurisdiction that these individuals (and the individuals who entered into the contracts on behalf of the contracting entities) constituted the putative class as of December 2022, and that this putative class continues to grow.

   b. The total number of workweeks recorded by the 216 contractors from February 1, 2021 to December 24, 2022 is 5,628. (*Id.* ¶ 7.)

    Plaintiff alleges that all putative class members were misclassified as independent contractors and thus did not receive any accurate, itemized wage statements. (Compl. ¶ 67.) Thus, Defendants assume for purposes of establishing jurisdiction that Plaintiff seeks penalties for 5,628 violations of Labor Code § 226 (one violation per person per pay period, which is equal to the total number of workweeks given that drivers are compensated weekly for the deliveries they complete). (Speiser Decl. ¶¶ 6-7.)

  c. Despite the fact that contractors' settlement under the contracts exceeds California's minimum wage, Defendants will reasonably assume for purposes of establishing jurisdiction that putative class members' hourly rate is the California state minimum wage, $15.00 per hour. Cal. Labor Code §§ 1182.12, 1197. Defendants will also reasonably assume that on days that drivers worked, they worked 8 hours per day.

    **1.** **Unlawful Deductions from Wages**

  37. California law precludes employers from collecting from employees any wages already paid to the employee. Cal. Labor Code § 221.

  38. Plaintiff's second cause of action is an allegation that Defendants made and continue to make numerous deductions from the wages of employees, including, for example, for "insurance, IFTA taxes, Drivers' use of XPO's D.O.T. number, and by requiring Drivers to lease equipment from Defendants." (Compl. ¶ 62.)

  39. Damages for violations of Cal. Labor Code § 221 count toward the $5 million threshold necessary to establish federal diversity jurisdiction under CAFA. *See, e.g.*, *Navarro v. Servisair, LLC*, 2008 WL 3842984, at *3, *8 (N.D. Cal. Aug. 14, 2008).

40. Plaintiff's demand for damages under Cal. Labor Code § 221 puts into controversy at least **$4,655,976**. From February 1, 2021 through December 24, 2022, a total of $4,370,916 in deductions from contractual settlements were taken from the 216 contractors who began contracting with XPO (later STG Cartage, LLC) after February 1, 2021. (Speiser Decl. ¶ 3.) Based on available data, over this period, deductions averaged approximately $880/month/contractor. (*Id.* ¶ 4.) As of December 2022, 147 (of the 216) contractors were active. (*Id.* ¶ 5.) Thus, between January 1, 2023 and February 14, 2023, there have likely been approximately $194,000 in additional deductions taken from the putative class.

41. In sum, Plaintiff's and putative class members' claims under Cal. Labor Code § 221 put into controversy a minimum of **$4,564,956** ($4,370,916 for deductions taken from February 1, 2021 through December 24, 2022 + $194,000 for estimated deductions taken from January 1, 2023 through February 14, 2023).

### 2. Penalties For Wage Statement Claims

42. California law requires employers to provide employees with accurate, itemized wage statements "at the time of each payment of wages." Cal. Labor Code § 226(a). California Labor Code § 226(e) provides that an employee is entitled to recover a penalty of $50 for the initial pay period in which a knowing and intentional violation of Section 226 occurs and $100 for each subsequent pay period.

43. Plaintiff's third cause of action is an allegation that Defendants failed "to provide accurate gross and net wages earned and hours worked on a paystub to Drivers." (Compl. ¶ 67.) Based on this allegation, Plaintiff alleges that the putative class is entitled to recover penalties under Section 226(e). (*Id.* ¶ 68.)

44. Damages for violations of Cal. Labor Code § 226(e) count toward the $5 million threshold necessary to establish federal diversity jurisdiction under CAFA. *See, e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010).

45. Plaintiff's demand for penalties under Cal. Labor Code § 226(e) puts into controversy at least **$552,000**. Plaintiff alleges that he and the putative class members did not receive accurate, itemized wage statements for any of the pay periods in which they worked. (Compl. ¶ 67.) Plaintiff and putative class members were engaged as drivers for a total of 5,628 workweeks from February 1, 2021 through December 24, 2022. (Speiser Decl. ¶ 7.) Moreover, Plaintiff and other contractors in the putative class were paid contractual settlement amounts on a weekly basis, so there are at least 5,628 weekly periods from February 1, 2021 through December 24, 2022. (*Id.* ¶¶ 6-7.) As such, the alleged initial wage statement violation for each of the 216 putative class members would result in a penalty of $10,800 (216 initial violations x $50), and the alleged violations in the subsequent pay periods would result in a penalty of $541,200 (5,628 total workweeks minus 216 initial workweeks = 5,412 workweeks x $100).

46. In sum, Plaintiff's and putative class members' claims under Cal. Labor Code § 226 put into controversy a minimum of **$552,000** ($10,800 for initial violations + $541,200 for subsequent violations).

### 3. Penalties For Failure to Pay Wages When Due

47. California law requires employers to pay all wages due upon separation of employment. Cal. Labor Code §§ 201-03. California law requires employers to pay waiting time penalties of up to 30 days of pay at the average day's payment rate, if the employers' failure to pay all wages due upon separation of employment was willful. Cal. Labor Code § 203.

48. Plaintiff's fourth cause of action is an allegation that Defendants' failed to pay all wages due upon separation of employment, and that Defendants' conduct was willful. (Compl. ¶¶ 71-72.)

49. Penalties under Cal. Labor Code §§ 201-03 count toward the $5 million threshold necessary to establish federal diversity jurisdiction under CAFA. *See, e.g., Coleman*, 730 F. Supp. 2d 1141 at 1148.

50. Plaintiff's demand for penalties under Cal. Labor Code §§ 201-03 puts into controversy at least **$248,400**. As of December 2022, 147 (of the 216) contractors were active, meaning that 69 contractors in the putative class no longer provide trucking services for Defendants, and are allegedly eligible for waiting time penalties of 30 days of pay each. (Speiser Decl. ¶ 5.) Despite the fact that contractors' settlement under the contracts exceeds California's minimum wage, if considered on an hourly basis, Defendants reasonably assume that a day's worth of pay is $120 per contractor ($15 hourly minimum wage x 8 hours per day), and that each of the 69 contractors would be owed 30 days' worth of pay.

51. In sum, Plaintiff's and putative class members claims under Cal. Labor Code §§ 201-03 put into a controversy a minimum of **$248,400** (69 contractors x $120 daily pay x 30 days).

### 4. Unreimbursed Expenses

52. California law requires employers to indemnify employees for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Cal. Labor Code § 2802(a). California Labor Code § 2802(b) also permits the collection of interest accruing from the day on which the necessary expenditure or loss was incurred.

53. Plaintiff's first cause of action is an allegation that the putative class incurred business expenses that Defendants did not reimburse, including "scale tickets, fuel costs exceeding XPO's rates, vehicle maintenance, and GPS devices." (Compl. ¶ 54.)

54. Although Plaintiff's Complaint does not provide sufficiently specific information upon which to calculate the jurisdictional value of this claim, this claim further increases the amount in dispute. Damages for violations of Cal. Labor Code § 2802 count toward the $5 million threshold necessary to establish federal diversity jurisdiction under CAFA. *See, e.g.*, *Evers v. La-Z-Boy Inc.*, 2022 WL 2966301, at *10 (S.D. Cal. July 27, 2022).

### 5. Penalties for Unfair Business Practices

55. California law requires employers to refrain from knowingly and willfully engaging in unlawful business practices. Cal. Bus. & Prof. Code § 17200, *et seq.*

56. Plaintiff's fifth cause of action is an allegation that Defendants engaged in unlawful business practices by (1) intentionally misclassifying employees as independent contractors, (2) imposing unreimbursed business expenses on employees, (3) failing to pay drivers for each hour worked, (4) failing to provide accurate wage statements, and (5) failing to pay drivers all wages upon termination. (Compl. ¶ 75.)

57. To the extent they are not duplicative, penalties under Cal. Bus. & Prof. Code § 17200 count toward the $5 million threshold necessary to establish federal diversity jurisdiction under CAFA. *See, e.g.*, *Vasquez v. Blue Cross of Cal.*, 2015 WL 2084592, at *5 (C.D. Cal. May 5, 2015).

### 6. Demand for Injunctive Relief

58. Plaintiff's prayer for relief seeks injunctive relief, including public injunctive relief, as described in the Complaint. (Compl. at 14.) Since the crux of Plaintiff's Complaint is the alleged misclassification of Plaintiff and the putative class, such injunctive relief would presumably include seeking an order requiring Defendants to reclassify Plaintiff and the putative class as employees. If granted, such relief would require Defendants to undertake a massive overhaul of their systems, processes, and core business model at substantial cost to Defendants. (Speiser Decl. ¶ 8.)

59. Costs required to comply with injunctive relief are considered in determining whether the amount in controversy is satisfied. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005).

### 7. Attorneys' Fees

60. As set forth above, merely some of Plaintiff's claims for damages and penalties, taken together, put into controversy a minimum of **$5,365,356**. This amount exceeds the $5,000,000 jurisdictional threshold under CAFA.

61. The amount in controversy also includes any attorneys' fees that may reasonably be awarded to Plaintiff's counsel throughout the entire course of this litigation. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 2018 WL 3748667, at *6 (9th Cir. Aug. 8, 2018) ("If the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy.") (cleaned up).

62. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), overruled on other grounds as recognized in *Castillo v. Bank of Am., NA*, 980 F.3d 723 (9th Cir. 2020). Courts have found that "it is not unreasonable for [a defendant] to rely on this estimate" for purposes of removal. *E.g., Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012). Here, 25% of Defendants' reasonable calculation of the amount in controversy would be **$1,341,339** ($5,365,356 x .25).

63. Thus, the total amount put into controversy by Plaintiff's and putative class members' claims is, at minimum, **$6,706,695** ($5,365,356 damages and penalties + $1,341,339 attorneys' fees).

64. In sum, while Defendants contends that Plaintiff's claims have no merit and cannot be certified for class treatment, because the amount in controversy in this action is at least $5,000,000, the jurisdictional threshold under CAFA is satisfied, and removal is proper. *See* 28 U.S.C. § 1332(d).

## II. VENUE.

65. Plaintiff's State Court Action was commenced in the Superior Court of the State of California for the County of Los Angeles and, pursuant to 28 U.S.C. §§ 84(c), 1446(a), (b) and (c), and 1453, may be removed to this United States District Court for the Central District of California, which embraces Los Angeles within its jurisdiction.

## III. PROCEDURAL REQUIREMENTS.

66. Defendants satisfy the procedural requirements for removal.

67. Pursuant to 28 U.S.C. § 1441(a), Defendants have removed this case to the district and division embracing the place where the State Court Action is pending.

68. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders filed in the State Court Action are attached hereto as Exhibits 1-12.

69. Pursuant to 28 U.S.C. § 1446(b)(1), (c), this Notice of Removal is timely because it was filed within thirty (30) days of service of the Complaint on Defendants and within one year of commencement of the action.

70. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be served upon all parties and a copy filed with the Clerk of Court for Department 14 of the Superior Court of the State of California, County of Los Angeles.

## IV. CONCLUSION.

71. For the reasons stated herein, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, the State Court Action may be removed to federal district court, and Defendants respectfully request that it be so removed.

WHEREFORE, Defendants respectfully give notice of and removes this action to this Court.

Dated: February 21, 2023

O'MELVENY & MYERS LLP
SCOTT VOELZ
ANDREW WEISBERG

By: */s/ Scott Voelz*
     Scott Voelz

Attorneys for Defendant
XPO LOGISTICS CARTAGE, LLC

JACKSON LEWIS P.C.
NICKY JATANA
JING TONG

By: */s/ Nicky Jatana*
     Nicky Jatana

Attorneys for Defendant
XPO LOGISTICS, INC.

### EFC ATTESTATION

I, Scott Voelz, am the EFC user whose identification and password are being used to file this Declaration. I hereby attest that Nicky Jatana has concurred in this filing.

*/s/ Scott Voelz*