# **Exhibit 1**

Electronically FILED by Superior Court of California, County of Los Angeles on 12/13/2022 04:25 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff,
MILTON QUINONES, an individual,
on behalf of himself and all others similarly situated

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MILTON QUINONES, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>XPO LOGISTICS, INC., a Delaware corporation; XPO LOGISTICS CARTAGE, LLC, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 22STCV38778<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];**<br><br>**(2) UNLAWFUL DEDUCTIONS FROM WAGES [LAB. CODE, §§ 221-223];**<br><br>**(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];**<br><br>**(4) FAILURE TO PAY WAGES WHEN DUE [LAB. CODE, §§ 201-203];**<br><br>**(5) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.].**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Exhibit 1
Page 1

1    MILTON QUINONES ("Plaintiff"), on behalf of himself and all others similarly situated,

2    brings this action against Defendants XPO LOGISTICS, INC., XPO LOGISTICS CARTAGE, LLC

3    (jointly, "XPO" or "Defendants"), and DOES 1 through 100, inclusive, and alleges on information

4    and belief as follows:

5                                    **INTRODUCTION**

6         1.    XPO Logistics, Inc., together with its subsidiaries, is a leading provider of freight

7    transportation services. XPO is a trucking company that uses its "Drivers" to move goods from one

8    location to another, at the direction of customers who set the time and place of pick up and drop

9    off. Under the management and control of XPO, these Drivers pick up, carry, and deliver freight

10   for XPO's third-party customers.

11        2.    XPO Logistics Cartage, LLC is a subsidiary of XPO Logistics, Inc. XPO Logistics

12   Cartage, LLC is a transportation services provider and contracts with Drivers to perform

13   transportation work.

14        3.    Drivers are a core component of the freight transportation services company

15   operated by XPO. They are also heavily controlled by XPO in carrying out their work. Yet, XPO

16   claims a significant portion of its Drivers are not employees and instead "independent contractors."

17        4.    By refusing to recognize many of its Drivers as employees, Defendants cheat these

18   individuals out of protections provided by California labor laws such as compliant wage statements

19   and reimbursement of business expenses. XPO's misclassification of Drivers also robs the State of

20   important employee tax revenue and gives XPO an undue advantage over law-abiding competitors

21   who bear the necessary expenses associated with employing similar workers.

22        5.    This Class Action seeks recovery on behalf of Plaintiff and other similarly situated

23   Drivers in California for violations of California's Labor Code and Industrial Welfare Commission

24   Wage Orders ("Wage Orders") along with violations of California's Unfair Competition Law

25   predicated upon violations of California's Labor Code and Wage Orders.

26   / / /

27   / / /

28   / / /

**JURISDICTION & VENUE**

6.    This Court has subject matter jurisdiction to hear this case because the damages and penalties sought herein resulting from Defendants' conduct exceeds the jurisdictional minimum of this Superior Court.

7.    Venue is proper pursuant to Code of Civil Procedure, sections 395 and 395.5, among other sections. Plaintiff Quinones and other Class Members performed truck driving services and were denied Labor Code protections in this County. Furthermore, the obligation to comply with the Labor Code for the group of workers relevant to this case and the resulting liability for misclassifying and denying Labor Code/Wage Order benefits to those workers arose in this County, among others. Defendants hire many Drivers in Los Angeles County who are misclassified and denied employment benefits.

**PARTIES**

8.    At all relevant times to this action, Mr. Quinones was a resident of California. He worked as a Driver for Defendants from February 2021 through late 2021.

9.    XPO Logistics, Inc. is a Delaware stock company with a principal business address at Five American Lane, Greenwich, CT 06831.

10.    XPO Logistics Cartage, LLC (successor to XPO Cartage, Inc.) is a Delaware limited liability company with a principal business address at 5165 Emerald Parkway, Suite 300, Dublin, OH 43017. XPO Logistics Cartage, LLC is a subsidiary of XPO Logistics, Inc. On April 27, 2022, XPO Logistics Cartage, LLC filed a certificate of amendment in the state of Delaware, changing its name to STG Cartage, LLC.

11.    As alleged herein, Defendants XPO Logistics, Inc. and XPO Logistics Cartage, LLC have directly hired the services of Drivers, including Plaintiff, who, at all relevant times herein, has resided and worked in the State of California.

12.    Plaintiff does not know the true names and/or capacities, whether individual, partners, or corporate, of Defendants sued herein as DOES 1 through 100, inclusive, and for that reason sues said Defendants under fictitious names. Plaintiff will seek leave to amend this Complaint when the true names and capacities of these Defendants have been ascertained. Plaintiff is informed and

believes and thereon alleges that these Defendants are responsible in whole or in part for Plaintiff's alleged damages.

13.     At all times mentioned, Defendants were the agents, alter egos, servants, joint venturers, joint employers, or employees for each other. Defendants acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment. All conduct was ratified by Defendants and each of them.

## GENERAL ALLEGATIONS

### A.     XPO's Business Model

14.     XPO and its subsidiaries are a "leading provider of freight transportation services." https://investors.xpo.com/static-files/75909c69-b8fb-4f93-b8bb-f517c0ad366a.     XPO     primarily provides less-than-truckload ("LTL") and truck brokerage services, which accounted for the majority of its 2021 revenue and operating income. *Id.* As a practical matter, XPO is primarily a trucking company, using Drivers to move goods from one location to another, at the direction of customers who set the time and place of pick up and drop off. There is no substantive distinction between XPO's core businesses and the function of its Drivers.

15.     In order to carry out its transportation services, XPO utilizes the labor of its Truck Drivers. The majority of XPO's LTL services are conducted by employee Drivers of XPO, while its truck brokerage services are conducted primarily by "independent contractor" Drivers. https://www.xpo.com/ (stating XPO employs at least 13,000 Drivers to conduct its LTL services); https://investors.xpo.com/static-files/75909c69-b8fb-4f93-b8bb-f517c0ad366a (stating XPO's LTL services are conducted primarily with employee Drivers, while its global brokerage network is conducted by at least 98,000 "independent truckload carriers"). XPO further obtains the labor of independent contractor Drivers to conduct services throughout its core businesses, who perform the same or similar services as their employee counterparts. In sum, a significant portion of the transportation services XPO provides to its customers is carried out by Drivers XPO classifies as "independent contractors" like Plaintiff.

16.     Needing to satisfy its customers and to provide the services they want, XPO retains and exercises a great deal of control over its Driver workforce. For example, XPO retains control

over the timing of Drivers' work, the work they may perform, the steps required to complete their work, and the like.

### B.   XPO Misclassifies Drivers

17.   Integral to Defendants' freight transportation services business, Defendants utilize the labor of Drivers, like Plaintiff and the Class he seeks to represent, to carry out transportation services for XPO's third-party customers. XPO labels a significant portion of its Drivers as "independent contractors." In short, these Drivers perform a central part of XPO's freight transportation services: the picking up, carrying, and delivery of freight for XPO customers. The work of Drivers is necessary to XPO's freight transportation services business and is continuously performed for XPO. Further, XPO holds itself out as a freight transportation services company. Truck Drivers are naturally an essential component of XPO's business model.

18.   XPO strictly controls and regulates Drivers. Drivers must follow the terms of XPO's onerous Independent Contractor Operating Contract ("ICOC"), along with other written instructions from XPO. Under these operating requirements and standards, XPO exerts control and direction on Drivers in connection with the performance of their freight transportation services, both in contract and in fact.

19.   Defendants exercise direct control of the manner that each Driver performs their work, including controlling their schedules, where the Driver delivers product, how the Driver works, paperwork, contact and communication with dispatch, purchase of fuel, collection of charges from customers, billing, reporting requirements, and related controls exerted by Defendants.

20.   Defendants require their Drivers sign an ICOC. The ICOC is a non-negotiable contract of adhesion. If a Driver does not sign the contract as provided, XPO does not give them work. Drivers may not assign the rights and duties set forth in the ICOC to a third party without the prior written consent of XPO. XPO provides the ICOC only in English, irrespective of the Driver's proficiency in that language.

21.   Defendants centrally determine Driver compensation, set forth in Schedule B of the ICOC. Defendants' corporate office reissues Schedule B each quarter and has sole discretion to make revisions. Drivers cannot negotiate their rates.

22.     Defendants' safety department sets protocols that Drivers must follow nationwide or risk termination. Defendants maintain a repository of Driver safety documents, such as motor vehicle records, licenses, employment verification, verification of work experience, and contracting records. In addition, Defendants hold weekly region-wide safety meetings and track Drivers' attendance at these meetings.

23.     XPO chooses to operate as a federally registered motor carrier, using XPO's own operating authority, even though the work could all be sent to carriers/drivers who use their own authority.

24.     Drivers operate motor vehicles bearing XPO's name, logo, and other signifiers.

25.     Defendants require all Drivers to submit an application to work with XPO. The process is extensive, requiring Drivers to provide background information and references from previous employers, among other things. XPO then conducts a background check and collects a variety of information about Drivers during onboarding.

26.     To work with XPO, Drivers must meet requirements more stringent than federal or state law. For example, Defendants require Drivers to have 12 months of commercial driving experience and set a higher age limit than federal law. Drivers must also pass a driving test even though they are qualified under federal and state law to drive a commercial vehicle and have the required license. XPO directs Drivers to obtain and submit renewed commercial driver's licenses well before they actually expire.

27.     During onboarding, Drivers must take a drug test at an XPO-approved clinic. XPO also has a random drug-testing program for all Drivers.

28.     During onboarding, which consists of multiple hours of meetings, XPO provides Drivers with its rules and policies through handbooks and other materials, which a safety specialist reviews with the Driver. These materials include a safety handbook called Safety Matters, which sets out mandatory safety rules and policies. Safety Matters is drafted by XPO's corporate office.

29.     In addition to written materials, Drivers also receive instruction through mandatory videos during onboarding, and must pass tests based on those videos. The training materials are drafted by XPO's corporate office. Drivers are required to complete training and tests during their

employment, as well. XPO puts Drivers out of service (i.e., does not permit them to work) if they do not complete all mandatory training.

30.      XPO requires multiple inspections. Drivers must complete daily pre- and post-trip inspections and submit reports to XPO. Drivers are also required to complete a monthly inspection, and are placed on dispatch hold if they do not. Drivers must submit receipts demonstrating maintenance and repairs on their trucks. Further, Drivers must complete 90-day inspections with a mechanic designated and paid by XPO, on penalty of dispatch hold. If the California Highway Patrol conducts a roadside inspection of a Driver's truck and equipment, the Driver must send a report of that inspection to XPO on an XPO form, even if no violations are found.

31.      Drivers must submit daily logs detailing their work electronically via their provided tablets at the end of every shift. XPO monitors Drivers for any missing logs and warns Drivers they must submit their daily logs or risk being placed on dispatch hold. Drivers must submit their logs for days they do not work.

32.      XPO dispatchers decide what work to send each Driver. XPO rarely provides Drivers with some options of what work they want to do. XPO sets appointment times for loads and Drivers assigned to those loads do not have the ability to change those times. There is no guarantee when or if Drivers will receive another assignment if they reject a load. Therefore, Drivers typically do not reject assignments from dispatch. Additionally, if a Driver rejects an assignment, they may be required to return to their terminal "bobtail" (i.e., without a load) for no pay.

33.      XPO tracks Drivers while they are delivering loads and knows when a Driver is picking up or dropping off. Drivers must begin assignments within two hours of being dispatched or XPO will take the assignment away.

34.      Defendants require all Drivers to comply with XPO's policies. Drivers who fail to comply can be placed on dispatch hold (i.e., suspended) or terminated.

35.      XPO has a safety scorecard that is affected by Drivers who incur safety or hours of service violations. XPO also has a point system that it uses to discipline Drivers. Drivers accumulate points for violating rules and policies related to safety, inspection of their vehicles, and equipment.

XPO terminates Drivers who accumulate 75 points. Neither the point system nor 75-point threshold are legal requirements.

36.     Outside of the point system, XPO also terminates Drivers for violating rules and policies, even if there is no corresponding legal rule prohibiting operation of a commercial vehicle, including in the following circumstances:

    a.    For being involved in two preventable accidents in a three-year period;

    b.    If cited for speeding by more than 15 miles per hour;

    c.    For committing a felony involving a motor vehicle (even if off-duty);

    d.    For leaving the scene of an accident;

    e.    For not reporting an accident on XPO's provided form;

    f.    For a driving-under-the-influence violation;

    g.    For talking on the cell phone;

    h.    For towing a chassis that has a punctured tire;

    i.    For not wearing a safety belt while driving;

    j.    For speeding in their personal vehicle; or

    k.    For being disrespectful to dispatchers.

37.     XPO also suspends Drivers by "putting them out of service" or "on dispatch hold" for failing to comply with XPO rules, for being involved in a preventable accident, or for not wearing a vest while inside the yard.

38.     XPO is well aware of its misclassification of Drivers. It has litigated prior misclassification cases and paid millions of dollars to settle them. Despite these settlements, XPO refuses to modify its business model and rightfully classifies its Driver workforce as employees.

39.     Furthermore, XPO classifies a portion of its Drivers as employees, while maintaining that other Drivers are "independent contractors," despite these groups of workers performing substantially similar or identical services.

**C.     XPO's Failure to Reimburse and Unlawful Deductions**

40.     XPO does not reimburse Drivers for necessary business expenses. These expenses include scale tickets, fuel costs exceeding XPO's rates, vehicle maintenance, and GPS devices.

41.    XPO also makes unlawful deductions from the wages of Drivers for items including insurance, IFTA taxes, use of XPO's D.O.T. number, and by requiring Drivers to lease equipment from Defendants necessary to their duties.

**D.    XPO's Failure to Comply with Other California Wage and Hour Laws**

42.    As explained further below, as a result of its unlawful misclassification, XPO fails to pay Drivers all wages when due and fails to provide Drivers compliant wage statements in violation of California law.

**CLASS ALLEGATIONS**

43.    Pursuant to Code of Civil Procedure, section 382, Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly situated members of the Class, defined below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

44.    **Class Period.** The Class Period shall be defined as: from the date after class notice was issued in *Alvarez, et al. v. XPO Logistics Cartage, LLC, et al.*, 2021 WL 5277713 (C.D. Cal. 2021) , until the full resolution of this action, plus any time that may be attributed to equitable or other forms of tolling.

45.    Plaintiff seeks to represent the following Class of persons:

a.    All individuals who (1) personally drove for XPO under a hiring agreement like an Independent Contractor Operating Contract, i.e., Drivers, in the state of California; (2) started working for XPO after the class notice was issued in *Alvarez, et al. v. XPO Logistics Cartage, LLC, et al.*, 2021 WL 5277713 (C.D. Cal. 2021); and (3) were classified by XPO as an independent contractor (the "Class").

b.    This Class does not include Defendants, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

46.    Plaintiff reserves the right to amend the above Class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability, among other reasons.

47.     **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiff is informed and believes that there are hundreds to thousands of individuals meeting the Class definition. Defendants have access to data sufficient to identify the members of the Class since all Drivers must sign an ICOC with Defendants and cannot outsource the work without XPO's permission.

48.     **Adequacy of Representation.** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class defined above. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the Class and Plaintiff. Plaintiff's attorneys are highly experienced in employment Class action litigation. Plaintiff intends to prosecute this action vigorously.

49.     **Common Questions of Law and Fact.** There are predominant common questions and answers of law and fact and a community of interest amongst Plaintiff and the claims of the Class as follows:

a.      Class:

i.      Whether Defendants misclassified Drivers as "independent contractors" instead of employees (e.g., whether XPO can meet its burden to meet each Prong of California's ABC test);

ii.     Whether Defendants failed to reimburse Drivers for reasonable business expenses;

iii.    Whether Defendants made illegal deductions from Drivers' earnings;

iv.     Whether Defendants paid Drivers all wages when due; and

v.      Whether Defendants engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business and Professions Code, section 17200 et seq. as it relates to Drivers.

50.     **Typicality.** Plaintiff's claims are typical of the claims of all members of the Class because Defendants applied and continue to apply its illegal classification and pay practices to all Drivers.

51.   **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery due to Defendants' conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Failure to Reimburse Expenses**
**Lab. Code, § 2802 and IWC Wage Orders**

52.   Plaintiff incorporates by reference every allegation contained above.

53.   Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

54.   Drivers necessarily incur many types of expenses that Defendants do not reimburse. These include but are not limited to scale tickets, fuel costs exceeding XPO's rates, vehicle maintenance, and GPS devices.

55.   As alleged above, Plaintiff and the Class incurred business expenses while performing necessary work for Defendants. They were never reimbursed because they were uniformly misclassified as independent contractors.

56.   The California Labor Code, section 2802, and applicable California Wage Orders require that employers reimburse employees for business expenses reasonably incurred. Defendants failed to do so.

57.   The Class has been damaged by Defendants' failures in this respect in an amount to be proven at trial.

58.   Plaintiff and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

/ / /

## SECOND CAUSE OF ACTION
### Unlawful Deductions from Wages
### Lab. Code, §§ 221-223 and IWC Wage Orders

59.     Plaintiff incorporates by reference every allegation contained above.

60.     Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

61.     Under Labor Code, section 221 it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. This protection extends to deductions for mistakes in employees' work or other non-malicious conduct. Applicable Wage Orders further provide that the only circumstances under which an employer can make a deduction from an employee's wage are due to cash shortage, breakage, or loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

62.     Despite this, Defendants made and continue to make numerous deductions from the wages of their misclassified Drivers. Defendants, for example, unlawfully deduct money for insurance, IFTA taxes, Drivers' use of XPO's D.O.T. number, and by requiring Drivers to lease equipment from Defendants necessary to their duties.

63.     Plaintiff and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

## THIRD CAUSE OF ACTION
### Failure to Provide Accurate Wage Statements
### Lab. Code, § 226 and IWC Wage Orders

64.     Plaintiff incorporates by reference every allegation contained above.

65.     Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

66.     The purpose of Labor Code section 226 is to ensure that employees can determine whether they are being paid their wages in accordance with California law. Under Section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorney's fees."

/ / /

67.     Defendants violated the above statute by, among other things, failing to provide accurate gross and net wages earned and hours worked on a paystub to Drivers.

68.     Defendants' violations of section 226 and applicable Wage Orders are ongoing and will continue until and unless this Court enters an injunction barring such violations. Therefore, Plaintiff seeks damages and injunctive relief pursuant to Labor Code, section 226, subsections (e) and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Wages When Due**
**Lab. Code, §§ 201-203 and IWC Wage Orders**

69.     Plaintiff incorporates by reference every allegation contained above.

70.     Plaintiff brings this cause of action as a Class action on behalf of himself and all members of the Class who are no longer working for Defendants.

71.     Defendants failed to pay all wages due, including the above-mentioned missing wages that went unreimbursed and wages illegally deducted from earnings, upon separation of employment as required by Labor Code sections 201 through 203. As such Plaintiff and other former Drivers in the Class are owed penalties in amount up to 30 days wages.

72.     Defendants' actions in this respect were willful within the meaning of Labor Code, section 203, entitling Plaintiff and the Class Members to recover waiting time penalties. Defendants failed to pay the above wages pursuant to its standard policies and procedures not to provide employment protections to Drivers. Defendants know or should know Drivers are misclassified as independent contractors. Defendants are represented by sophisticated counsel with a deep understanding of California law who surely understand Defendants cannot meet its burden to prove Drivers are independent contractors. In addition, Defendants have litigated prior misclassification cases concerning its Drivers and paid millions of dollars to settle them.

73.     Plaintiff and the Class Members are entitled to recover waiting time penalties and unpaid wages, as well as interest, applicable penalties, attorneys' fees, and costs.

/ / /

/ / /

/ / /

**FIFTH CAUSE OF ACTION**
**Unfair Business Practices**
**Bus. & Prof. Code, § 17200 et seq.**

74.   Plaintiff incorporates by reference every allegation contained above.

75.   Defendants knowingly and willfully engaged in the unlawful practices described above, which include but are not limited to:

      a.   Intentionally misclassifying its employee Drivers as "independent contractors;"

      b.   Imposing unreimbursed business expenses on misclassified employees in violation of Labor Code, sections 2802;

      c.   Failing to pay Drivers for each hour worked;

      d.   Failing to provide accurate pay statements to Drivers in violation of Labor Code, section 226; and

      e.   Failing to pay Drivers all wages due upon termination.

76.   Defendants intended to, and did, profit from these illegal acts.

77.   As a direct and proximate result of the above, Plaintiff and the Class Members have lost money or property, thereby entitling these individuals to restitution.

78.   Pursuant to the Business and Professions Code, Plaintiff and the Class Members are entitled to restitution of money or property acquired by Defendants by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

79.   Pursuant to the Business and Professions Code, the Class and the public are also entitled to injunctive relief against Defendants' ongoing continuation of such unlawful business practices, including public injunctive relief. Plaintiff seeks such public injunctive relief here prohibiting Defendants from continuing its illegal practice of misclassifying Drivers, including Plaintiff, and denying them of important wage laws.

80.   If Defendants are not enjoined from engaging in the unlawful business practices described above, Plaintiff, Class Members, and the public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain now.

81.   The Class, including Plaintiff, has no plain, speedy, and adequate remedy at law.

82.     Defendants will continue to engage in the unlawful business practices described above in violation of the Business and Professions Code, in derogation of the rights of Plaintiff, the Class, and of the public, if not enjoined by this Court.

83.     The success of Plaintiff in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

84.     Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit under the "common fund," "substantial benefit," and other important doctrines.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, as follows:

1.  For an order certifying the Class as described herein, appointing Plaintiff as Class representative, and his counsel as Class counsel;
2.  For compensatory damages according to proof;
3.  For enhanced damages, liquidated damages, and penalties as permitted under prevailing law;
4.  For pre-judgment and post-judgment interest where allowable;
5.  For costs of suit;
6.  For injunctive relief, including public injunctive relief, as described herein;
7.  For restitution as described herein;
8.  For punitive damages, where appropriate;
9.  For reasonable attorneys' fees and costs; and
10. For such other and further relief as this Court may deem just and proper.

/ / /
/ / /
/ / /
/ / /

1

**DEMAND FOR JURY TRIAL**

2      Plaintiff demands a trial by jury on all issues so triable.

3   Respectfully submitted:

4   Dated:  December 13, 2022          **NICHOLAS & TOMASEVIC, LLP**

5

6                              By:

7                              Craig M. Nicholas (SBN 178444)
                               Shaun Markley (SBN 291785)
8                              Jordan Belcastro (SBN 339570)
                               225 Broadway, 19th Floor
9                              San Diego, CA 92101
                               Tel: (619) 325-0492
10                             Fax: (619) 325-0496
                               Email: cnicholas@nicholaslaw.org
11                             Email: smarkley@nicholaslaw.org
                               Email: jbelcastro@nicholaslaw.org

12                             *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28