**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiff MILTON QUINONES, an individual, on behalf of himself
and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON QUINONES, an individual, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>STG LOGISTICS, INC., a California corporation; STG CARTAGE, LLC, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No. 2:23-cv-01301-AB-KS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];**<br><br>**(2) UNLAWFUL DEDUCTIONS FROM WAGES [LAB. CODE, §§ 221-223];**<br><br>**(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];**<br><br>**(4) FAILURE TO PAY WAGES WHEN DUE [LAB. CODE, §§ 201-203];**<br><br>**(5) FAILURE TO PAY MINIMUM WAGE [LAB. CODE, §§ 1194, 1194.2, 1197];**<br><br>**(6) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.].**<br><br>**(7) CIVIL PENALTIES UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CAL. LAB. CODE §§ 2699, *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

SECOND AMENDED CLASS ACTION COMPLAINT

MILTON QUINONES ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendants STG LOGISTICS, INC., STG CARTAGE, LLC (jointly, "STG" or "Defendants"), and DOES 1 through 100, inclusive, and alleges on information and belief as follows:

**INTRODUCTION**

1.     STG Logistics, Inc., together with its subsidiaries, is a leading provider of freight transportation services. STG is a trucking company that uses its "Drivers" to move goods from one location to another, at the direction of customers who set the time and place of pick up and drop off. Under the management and control of STG, these Drivers pick up, carry, and deliver freight for STG's third-party customers.

2.     STG Cartage, LLC is a subsidiary of STG Logistics, Inc. STG Cartage, LLC is a transportation services provider and contracts with Drivers to perform transportation work.

3.     Drivers are a core component of the freight transportation services company operated by STG. They are also heavily controlled by STG in carrying out their work. Yet, STG claims a significant portion of its Drivers are not employees and instead "independent contractors."

4.     By refusing to recognize many of its Drivers as employees, Defendants cheat these individuals out of protections provided by California labor laws such as compliant wage statements and reimbursement of business expenses. STG's misclassification of Drivers also robs the State of important employee tax revenue and gives STG an undue advantage over law-abiding competitors who bear the necessary expenses associated with employing similar workers.

5.     This Class Action seeks recovery on behalf of Plaintiff and other similarly situated Drivers in California for violations of California's Labor Code and Industrial Welfare Commission Wage Orders ("Wage Orders") along with violations of California's Unfair Competition Law predicated upon violations of California's Labor Code and Wage Orders.

**JURISDICTION & VENUE**

6.     This Court has subject matter jurisdiction to hear this case because the damages and penalties sought herein resulting from Defendants' conduct exceeds the jurisdictional minimum of this Superior Court.

7.     Venue is proper pursuant to Code of Civil Procedure, sections 395 and 395.5, among other sections. Plaintiff Quinones and other Class Members performed truck driving services and were denied Labor Code protections in this County. Furthermore, the obligation to comply with the Labor Code for the group of workers relevant to this case and the resulting liability for misclassifying and denying Labor Code/Wage Order benefits to those workers arose in this County, among others. Defendants hire many Drivers in Los Angeles County who are misclassified and denied employment benefits.

**PARTIES**

8.     At all relevant times to this action, Mr. Quinones was a resident of California. He worked as a Driver for Defendants from February 2021 through late 2021.

9.     STG Logistics, Inc. is a California corporation with a principal business address at 951 Thorndale Avenue, Bensenville, IL 60106.

10.     STG Cartage, LLC is a Delaware limited liability company with a principal business address at 5165 Emerald Parkway, Suite 300, Dublin, OH 43017. STG Cartage, LLC is a subsidiary of STG Logistics, Inc.

11.     As alleged herein, Defendants STG Logistics, Inc. and STG Cartage, LLC have directly hired the services of Drivers, including Plaintiff, who, at all relevant times herein, has resided and worked in the State of California.

12.     Plaintiff does not know the true names and/or capacities, whether individual, partners, or corporate, of Defendants sued herein as DOES 1 through 100, inclusive, and for that reason sues said Defendants under fictitious names. Plaintiff will seek leave to amend this Complaint when the true names and capacities of these

Defendants have been ascertained. Plaintiff is informed and believes and thereon alleges that these Defendants are responsible in whole or in part for Plaintiff's alleged damages.

13.     At all times mentioned, Defendants were the agents, alter egos, servants, joint venturers, joint employers, or employees for each other. Defendants acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment. All conduct was ratified by Defendants and each of them.

## GENERAL ALLEGATIONS

### A.     STG's Business Model

14.     STG and its subsidiaries offer "company-owned and contracted trucked across the U.S., delivering intermodal, domestic and containerized cargo." https://www.stgusa.com/drayage-3/.   STG further describes itself as " a leading provider of intermodal solutions for cargo owners and logistics companies." https://www.stgusa.com/intermodal/. As a practical matter, STG is primarily a trucking company, using Drivers to move goods from one location to another, at the direction of customers who set the time and place of pick up and drop off. There is no substantive distinction between STG's core businesses and the function of its Drivers.

15.     In order to carry out its transportation services, STG utilizes the labor of its Truck Drivers. STG employs individuals to perform a portion of its trucking services. STG further obtains the labor of independent contractor Drivers to conduct services throughout its core businesses, who perform the same or similar services as their employee counterparts. In sum, a significant portion of the transportation services STG provides to its customers is carried out by Drivers STG classifies as "independent contractors" like Plaintiff.

16.     Needing to satisfy its customers and to provide the services they want, STG retains and exercises a great deal of control over its Driver workforce. For

SECOND AMENDED CLASS ACTION COMPLAINT

example, STG retains control over the timing of Drivers' work, the work they may perform, the steps required to complete their work, and the like.

## B. STG Misclassifies Drivers

17. Integral to Defendants' freight transportation services business, Defendants utilize the labor of Drivers, like Plaintiff and the Class he seeks to represent, to carry out transportation services for STG's third-party customers. STG labels a significant portion of its Drivers as "independent contractors." In short, these Drivers perform a central part of STG's freight transportation services: the picking up, carrying, and delivery of freight for STG customers. The work of Drivers is necessary to STG's freight transportation services business and is continuously performed for STG. Further, STG holds itself out as a freight transportation services company. Truck Drivers are naturally an essential component of STG's business model.

18. STG strictly controls and regulates Drivers. Drivers must follow the terms of STG's onerous Independent Contractor Operating Contract ("ICOC"), along with other written instructions from STG. Under these operating requirements and standards, STG exerts control and direction on Drivers in connection with the performance of their freight transportation services, both in contract and in fact.

19. Defendants exercise direct control of the manner that each Driver performs their work, including controlling their schedules, where the Driver delivers product, how the Driver works, paperwork, contact and communication with dispatch, purchase of fuel, collection of charges from customers, billing, reporting requirements, and related controls exerted by Defendants.

20. Defendants require their Drivers sign an ICOC. The ICOC is a non-negotiable contract of adhesion. If a Driver does not sign the contract as provided, STG does not give them work. Drivers may not assign the rights and duties set forth in the ICOC to a third party without the prior written consent of STG. STG provides the ICOC only in English, irrespective of the Driver's proficiency in that language.

21. Defendants centrally determine Driver compensation, set forth in Schedule B of the ICOC. Defendants' corporate office reissues Schedule B each quarter and has sole discretion to make revisions. Drivers cannot negotiate their rates.

22. Drivers are paid on a piece-rate basis, determined by the number of loads they transport. Drivers are not paid compensation for the rest of the time during which they are under STG's control. For example, Drives are not compensated for time spent waiting at STG's facilities to receive an assignment of dispatch, meetings with STG's Safety Department personnel, conducting mandatory pre- and post-trip truck safety inspections, and filling out mandatory paperwork such as time logs, manifests, lease paperwork, and pre- and post-trip inspections.

23. Defendants' safety department sets protocols that Drivers must follow nationwide or risk termination. Defendants maintain a repository of Driver safety documents, such as motor vehicle records, licenses, employment verification, verification of work experience, and contracting records. In addition, Defendants hold weekly region-wide safety meetings and track Drivers' attendance at these meetings.

24. STG chooses to operate as a federally registered motor carrier, using STG's own operating authority, even though the work could all be sent to carriers/drivers who use their own authority.

25. Drivers operate motor vehicles bearing STG's name, logo, and other signifiers.

26. Defendants require all Drivers to submit an application to work with STG. The process is extensive, requiring Drivers to provide background information and references from previous employers, among other things. STG then conducts a background check and collects a variety of information about Drivers during onboarding.

27. To work with STG, Drivers must meet requirements more stringent than federal or state law. For example, Defendants require Drivers to have 12 months of commercial driving experience and set a higher age limit than federal law. Drivers

must also pass a driving test even though they are qualified under federal and state law to drive a commercial vehicle and have the required license. STG directs Drivers to obtain and submit renewed commercial driver's licenses well before they actually expire.

28.     During onboarding, Drivers must take a drug test at an STG-approved clinic. STG also has a random drug-testing program for all Drivers.

29.     During onboarding, which consists of multiple hours of meetings, STG provides Drivers with its rules and policies through handbooks and other materials, which a safety specialist reviews with the Driver. These materials include a safety handbook called Safety Matters, which sets out mandatory safety rules and policies. Safety Matters is drafted by STG's corporate office.

30.     In addition to written materials, Drivers also receive instruction through mandatory videos during onboarding, and must pass tests based on those videos. The training materials are drafted by STG's corporate office. Drivers are required to complete training and tests during their employment, as well. STG puts Drivers out of service (i.e., does not permit them to work) if they do not complete all mandatory training.

31.     STG requires multiple inspections. Drivers must complete daily pre- and post-trip inspections and submit reports to STG. Drivers are also required to complete a monthly inspection, and are placed on dispatch hold if they do not. Drivers must submit receipts demonstrating maintenance and repairs on their trucks. Further, Drivers must complete 90-day inspections with a mechanic designated and paid by STG, on penalty of dispatch hold. If the California Highway Patrol conducts a roadside inspection of a Driver's truck and equipment, the Driver must send a report of that inspection to STG on an STG form, even if no violations are found.

32.     Drivers must submit daily logs detailing their work electronically via their provided tablets at the end of every shift. STG monitors Drivers for any missing

logs and warns Drivers they must submit their daily logs or risk being placed on dispatch hold. Drivers must submit their logs for days they do not work.

33.     STG dispatchers decide what work to send to each Driver. STG rarely provides Drivers with some options of what work they want to do. STG sets appointment times for loads and Drivers assigned to those loads do not have the ability to change those times. There is no guarantee when or if Drivers will receive another assignment if they reject a load. Therefore, Drivers typically do not reject assignments from dispatch. Additionally, if a Driver rejects an assignment, they may be required to return to their terminal "bobtail" (i.e., without a load) for no pay.

34.     STG tracks Drivers while they are delivering loads and knows when a Driver is picking up or dropping off. Drivers must begin assignments within two hours of being dispatched or STG will take the assignment away.

35.     Defendants require all Drivers to comply with STG's policies. Drivers who fail to comply can be placed on dispatch hold (i.e., suspended) or terminated.

36.     STG has a safety scorecard that is affected by Drivers who incur safety or hours of service violations. STG also has a point system that it uses to discipline Drivers. Drivers accumulate points for violating rules and policies related to safety, inspection of their vehicles, and equipment. STG terminates Drivers who accumulate 75 points. Neither the point system nor 75-point threshold are legal requirements.

37.     Outside of the point system, STG also terminates Drivers for violating rules and policies, even if there is no corresponding legal rule prohibiting operation of a commercial vehicle, including in the following circumstances:

       a.     For being involved in two preventable accidents in a three-year period;

       b.     If cited for speeding by more than 15 miles per hour;

       c.     For committing a felony involving a motor vehicle (even if off-duty);

       d.     For leaving the scene of an accident;

1        e.     For not reporting an accident on STG's provided form;

2        f.     For a driving-under-the-influence violation;

3        g.     For talking on the cell phone;

4        h.     For towing a chassis that has a punctured tire;

5        i.     For not wearing a safety belt while driving;

6        j.     For speeding in their personal vehicle; or

7        k.     For being disrespectful to dispatchers.

8      38.    STG also suspends Drivers by "putting them out of service" or "on

9 dispatch hold" for failing to comply with STG rules, for being involved in a

10 preventable accident, or for not wearing a vest while inside the yard.

11      39.    STG is well aware of its misclassification of Drivers. It has litigated prior

12 misclassification cases and paid millions of dollars to settle them. Despite these

13 settlements, STG refuses to modify its business model and rightfully classifies its

14 Driver workforce as employees.

15      40.    Furthermore, STG classifies a portion of its Drivers as employees, while

16 maintaining that other Drivers are "independent contractors," despite these groups of

17 workers performing substantially similar or identical services.

18      **C.    STG's Failure to Reimburse and Unlawful Deductions**

19      41.    STG does not reimburse Drivers for necessary business expenses. These

20 expenses include scale tickets, fuel costs exceeding STG's rates, vehicle maintenance,

21 and GPS devices.

22      42.    STG also makes unlawful deductions from the wages of Drivers for items

23 including insurance, IFTA taxes, use of STG's D.O.T. number, and by requiring

24 Drivers to lease equipment from Defendants necessary to their duties.

25 / / /

26 / / /

27 / / /

28 / / /

SECOND AMENDED CLASS ACTION COMPLAINT

**D.    STG's Failure to Comply with Other California Wage and Hour Laws**

43.    As explained further below, as a result of its unlawful misclassification, STG fails to pay Drivers all wages when due and fails to provide Drivers compliant wage statements in violation of California law.

## CLASS ALLEGATIONS

44.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly situated members of the Class, defined below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

45.    **Class Period.** The Class Period shall be defined as: from the date after class notice was issued in *Alvarez, et al. v. XPO Logistics Cartage, LLC, et al.*, 2021 WL 5277713 (C.D. Cal. 2021), until the full resolution of this action, plus any time that may be attributed to equitable or other forms of tolling.

46.    Plaintiff seeks to represent the following Class of persons:

a.    All individuals who (1) personally drove for STG (or formerly XPO) under a hiring agreement like an Independent Contractor Operating Contract, i.e., Drivers, in the state of California; (2) started working for STG after the class notice was issued in *Alvarez, et al. v. XPO Logistics Cartage, LLC, et al.*, 2021 WL 5277713 (C.D. Cal. 2021); and (3) were classified by STG as an independent contractor (the "Class").

b.    This Class does not include Defendants, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

47.    Plaintiff reserves the right to amend the above Class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability, among other reasons.

48.   **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiff is informed and believes that there are hundreds to thousands of individuals meeting the Class definition. Defendants have access to data sufficient to identify the members of the Class since all Drivers must sign an ICOC with Defendants and cannot outsource the work without STG's permission.

49.   **Adequacy of Representation.** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class defined above. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the Class and Plaintiff. Plaintiff's attorneys are highly experienced in employment Class action litigation. Plaintiff intends to prosecute this action vigorously.

50.   **Common Questions of Law and Fact.** There are predominant common questions and answers of law and fact and a community of interest amongst Plaintiff and the claims of the Class as follows:

       a.   Class:

             i.   Whether Defendants misclassified Drivers as "independent contractors" instead of employees (e.g., whether STG can meet its burden to meet each Prong of California's ABC test);

             ii.   Whether Defendants failed to reimburse Drivers for reasonable business expenses;

             iii.   Whether Defendants made illegal deductions from Drivers' earnings;

             iv.   Whether Defendants paid Drivers all wages when due; and

             v.   Whether Defendants engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business

1  and Professions Code, section 17200 et seq. as it relates to

2  Drivers.

3      51.    **Typicality.** Plaintiff's claims are typical of the claims of all members of

4  the Class because Defendants applied and continue to apply its illegal classification

5  and pay practices to all Drivers.

6      52.    **Superiority of a Class Action.** A Class action is superior to other

7  available means for the fair and efficient adjudication of this controversy. Individual

8  joinder of all members of the Class is not practicable, and questions of law and fact

9  common to the Class predominate over questions affecting only individual Class

10  members. Each Class member has been damaged and is entitled to recovery due to

11  Defendants' conduct described in this Complaint. A Class action will allow those

12  similarly situated to litigate their claims in the most efficient and economical manner

13  for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be

14  encountered in this action that would preclude its maintenance as a Class action.

15  

**<u>CAUSES OF ACTION</u>**

16
17  

**FIRST CAUSE OF ACTION**
**Failure to Reimburse Expenses**
**Lab. Code, § 2802 and IWC Wage Orders**

18      53.    Plaintiff incorporates by reference every allegation contained above.

19      54.    Plaintiff brings this cause of action as a Class action on behalf of himself

20  and the Class.

21      55.    Drivers necessarily incur many types of expenses that Defendants do not

22  reimburse. These include but are not limited to scale tickets, fuel costs exceeding

23  STG's rates, vehicle maintenance, and GPS devices.

24      56.    As alleged above, Plaintiff and the Class incurred business expenses

25  while performing necessary work for Defendants. They were never reimbursed

26  because they were uniformly misclassified as independent contractors.

27  / / /

28  / / /

11                2:23-cv-01301-AB-KS
SECOND AMENDED CLASS ACTION COMPLAINT

57.    The California Labor Code, section 2802, and applicable California Wage Orders require that employers reimburse employees for business expenses reasonably incurred. Defendants failed to do so.

58.    The Class has been damaged by Defendants' failures in this respect in an amount to be proven at trial.

59.    Plaintiff and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

**SECOND CAUSE OF ACTION**
**Unlawful Deductions from Wages**
**Lab. Code, §§ 221-223 and IWC Wage Orders**

60.    Plaintiff incorporates by reference every allegation contained above.

61.    Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

62.    Under Labor Code, section 221 it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. This protection extends to deductions for mistakes in employees' work or other non-malicious conduct. Applicable Wage Orders further provide that the only circumstances under which an employer can make a deduction from an employee's wage are due to cash shortage, breakage, or loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

63.    Despite this, Defendants made and continue to make numerous deductions from the wages of their misclassified Drivers. Defendants, for example, unlawfully deduct money for insurance, IFTA taxes, Drivers' use of STG's D.O.T. number, and by requiring Drivers to lease equipment from Defendants necessary to their duties.

64.    Plaintiff and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

/ / /

**THIRD CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements**
**Lab. Code, § 226 and IWC Wage Orders**

65.     Plaintiff incorporates by reference every allegation contained above.

66.     Plaintiff brings this cause of action as a Class action on behalf of himself and the Class.

67.     The purpose of Labor Code section 226 is to ensure that employees can determine whether they are being paid their wages in accordance with California law. Under Section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorney's fees."

68.     Defendants violated the above statute by, among other things, failing to provide accurate gross and net wages earned and hours worked on a paystub to Drivers.

69.     Defendants' violations of section 226 and applicable Wage Orders are ongoing and will continue until and unless this Court enters an injunction barring such violations. Therefore, Plaintiff seeks damages and injunctive relief pursuant to Labor Code, section 226, subsections (e) and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Wages When Due**
**Lab. Code, §§ 201-203 and IWC Wage Orders**

70.     Plaintiff incorporates by reference every allegation contained above.

71.     Plaintiff brings this cause of action as a Class action on behalf of himself and all members of the Class who are no longer working for Defendants.

72.     Defendants failed to pay all wages due, including the above-mentioned missing wages that went unreimbursed and wages illegally deducted from earnings, upon separation of employment as required by Labor Code sections 201 through 203. As such Plaintiff and other former Drivers in the Class are owed penalties in amount up to 30 days wages.

73.     Defendants' actions in this respect were willful within the meaning of Labor Code, section 203, entitling Plaintiff and the Class Members to recover waiting time penalties. Defendants failed to pay the above wages pursuant to its standard policies and procedures not to provide employment protections to Drivers. Defendants know or should know Drivers are misclassified as independent contractors. Defendants are represented by sophisticated counsel with a deep understanding of California law who surely understand Defendants cannot meet its burden to prove Drivers are independent contractors. In addition, Defendants have litigated prior misclassification cases concerning its Drivers and paid millions of dollars to settle them.

74.     Plaintiff and the Class Members are entitled to recover waiting time penalties and unpaid wages, as well as interest, applicable penalties, attorneys' fees, and costs.

**FIFTH CAUSE OF ACTION**
**Failure to Pay Minimum Wage**
**Lab. Code, §§ 1194, 1194.2, & 1197 and IWC Wage Orders**

75.     Plaintiff incorporates by reference every allegation contained above.

76.     Plaintiff brings this cause of action as a Class action on behalf of himself and all members of the Class who are no longer working for Defendants.

77.     Labor Code section 1197 makes it unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked.

78.     Labor Code section 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.

79.     Labor Code section 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

/ / /

80.   Class Members, including Plaintiffs, are paid a piece rate, consisting of a flat, non-negotiable amount for each load they transport. Defendants do not pay Class Members earned compensation for additional time they are under the control of Defendants and suffered or permitted to work, including, but not limited to, the time drivers spend waiting at the STG Defendants' facility to be given assignments by dispatchers, meeting with the STG Defendants' Safety Department personnel, conducting pre-trip and post-trip truck and safety inspections mandated by Defendants, and filling out mandatory paperwork, including, without limitation, time logs, manifests, lease paperwork, and pre-trip and post-trip inspections.

81.   As a result of Defendants' improper pay policy and/or practice, as described herein, Defendants failed to pay Plaintiff and other Class Members any compensation at all for each of hour of work outside of actual driving time, and thus failed to pay the minimum wage that these workers were entitled to, for each hour worked, under Labor Code section 1197 and applicable IWC Wage Orders.

82.   Plaintiff is informed and believes, and based thereon alleges, that Defendants' failure to pay the minimum wage for each hour worked, as described herein, was done willfully.

83.   Additionally, as a result of Defendants' failure to pay Plaintiff and other misclassified truck drivers the minimum wages for all hours worked, these workers were not timely paid all earned wages as required by Labor Code section 204.

84.   Based on Defendants' conduct, as alleged herein, the STG Defendants, and Does 1 through 100, are liable to the Class Members, including Plaintiff, for unpaid minimum-wage compensation pursuant to California Labor Code sections 1194 and 1197, and applicable IWC Wage Orders, liquidated damages in an amount equal to the unpaid wages owed to such employees, plus interest, pursuant to California Labor Code sections 1194.2, and attorneys' fees and costs of suit, pursuant to California Labor Code sections 1194 and 1194.2.

/ / /

## SIXTH CAUSE OF ACTION
### Unfair Business Practices
### Bus. & Prof. Code, § 17200 et seq.

85. Plaintiff incorporates by reference every allegation contained above.

86. Defendants knowingly and willfully engaged in the unlawful practices described above, which include but are not limited to:

      a.    Intentionally misclassifying its employee Drivers as "independent contractors;"

      b.    Imposing unreimbursed business expenses on misclassified employees in violation of Labor Code, sections 2802;

      c.    Failing to pay Drivers for each hour worked;

      d.    Failing to provide accurate pay statements to Drivers in violation of Labor Code, section 226; and

      e.    Failing to pay Drivers all wages due upon termination.

87. Defendants intended to, and did, profit from these illegal acts.

88. As a direct and proximate result of the above, Plaintiff and the Class Members have lost money or property, thereby entitling these individuals to restitution.

89. Pursuant to the Business and Professions Code, Plaintiff and the Class Members are entitled to restitution of money or property acquired by Defendants by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

90. Pursuant to the Business and Professions Code, the Class and the public are also entitled to injunctive relief against Defendants' ongoing continuation of such unlawful business practices, including public injunctive relief. Plaintiff seeks such public injunctive relief here prohibiting Defendants from continuing its illegal practice of misclassifying Drivers, including Plaintiff, and denying them of important wage laws.

///

91.     If Defendants are not enjoined from engaging in the unlawful business practices described above, Plaintiff, Class Members, and the public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain now.

92.     The Class, including Plaintiff, has no plain, speedy, and adequate remedy at law.

93.     Defendants will continue to engage in the unlawful business practices described above in violation of the Business and Professions Code, in derogation of the rights of Plaintiff, the Class, and of the public, if not enjoined by this Court.

94.     The success of Plaintiff in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

95.     Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit under the "common fund," "substantial benefit," and other important doctrines.

**SEVENTH CAUSE OF ACTION**
**Civil Penalties Under the California Private Attorneys General Act**
**Lab. Code, §§ 2699, *et seq.***

96.     Plaintiff incorporates each and every allegation contained above.

97.     PAGA permits aggrieved employees, like Plaintiff, to recover civil penalties for violations of numerous Labor Code sections on behalf of the State of California. (*See* Cal. Lab. Code, § 2699.5.) Defendants' conduct, as alleged above, violates numerous sections of the California Labor Code, including but not limited to, the following:

/ / /

/ / /

a.   Labor Code sections 201, 202, 203, 204, 210, 218.5, and 218.6 for failure to timely pay Plaintiff and other aggrieved employees all earned wages;

b.   Labor Code sections 221, 223, 224, and 225.5 for deducting wages from Plaintiff and other aggrieved employees without their express written consent or other legal authority for doing so;

c.   Labor Code section 226. 226.2, 226.3, and 226.7 for failure to maintain and provide accurate employment records related to Plaintiff's and other aggrieved employees' work;

d.   Labor Code sections 226.7, 512, and 558 for failure to provide all required meal and rest breaks to Plaintiff and other aggrieved employees;

e.   Labor Code sections 226.8 and 2775 for willful misclassification of Drivers as "independent contractors";

f.   Labor Code sections 402, 404, 405, and 408 for demanding, exacting, or accepting a cash bond from Plaintiff and other aggrieved employees;

g.   Labor Code sections 432.5 and 2804 for requiring Drivers to agree to an independent contractor operating contract setting forth policies in violation of California law;

h.   Labor Code section 450 for coercing Plaintiff and other aggrieved employees to patronize Defendants in the purchase of anything of value;

i.   Labor Code sections 510, 558, and 1198 for failure to compensate Plaintiff and other aggrieved employees with all required overtime pay;

j.   Labor Code sections 1194 and 1197 for failure to pay Plaintiff and other aggrieved employees all earned wages;

k.    Labor Code sections 558, 1194, 1194.2, 1197, and 1197.1 for failure to compensate Drivers for all hours worked;

l.    Labor Code sections 2800 and 2802 for failure to reimburse or indemnify expenses or losses incurred as a result of Plaintiff and other aggrieved employees performing work duties.

98.    Plaintiff has complied with all administrative requirements and pre-conditions contained within Labor Code section 2699.3. Plaintiff's counsel electronically submitted the Initial PAGA Notice on September 15, 2023 on behalf of Plaintiff Milton Quinones. A copy of the notice was provided to Defendants. The required 60-day period passed without any notice form the LWDA stating an intention to investigate the claims provided in the notice.

99.    Pursuant to PAGA, and, in particular, California Labor Code sections 2699, 2699.3, and 2699.5, Plaintiff is entitled to and hereby seeks to recover civil penalties against Defendants, in addition to reasonable attorneys fees and costs, on behalf of himself, the State, and all other similarly-aggrieved employees for violation of the Labor Code sections referenced in this Complaint.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, as follows:

1.    For an order certifying the Class as described herein, appointing Plaintiff as Class representative, and his counsel as Class counsel;

2.    For compensatory damages according to proof;

3.    For civil penalties according to proof;

4.    For enhanced damages, liquidated damages, and penalties as permitted under prevailing law;

5.    For pre-judgment and post-judgment interest where allowable;

6.    For costs of suit;

7.    For injunctive relief, including public injunctive relief, as described herein;

8.      For restitution as described herein;

9.      For punitive damages, where appropriate;

10.     For reasonable attorneys' fees and costs; and

11.     For such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted:

Dated: November 27, 2023            **NICHOLAS & TOMASEVIC, LLP**

By:     */s Shaun Markley*
        Craig M. Nicholas (SBN 178444)
        Shaun Markley (SBN 291785)
        Jordan Belcastro (SBN 339570)
        225 Broadway, 19th Floor
        San Diego, CA 92101
        Tel: (619) 325-0492
        Fax: (619) 325-0496
        Email: cnicholas@nicholaslaw.org
        Email: smarkley@nicholaslaw.org
        Email: jbelcastro@nicholaslaw.org

        Attorneys for Plaintiff, MILTON
        QUINONES, an individual, on behalf of
        himself and all others similarly situated

SECOND AMENDED CLASS ACTION COMPLAINT